PATTERSON *v.* POLK.

5-1600                                       317 S. W. 2d 286

Opinion delivered June 23, 1958.

[Rehearing denied October 13, 1958.]

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Wootton, Land & Matthews* and *Harry E. Meek,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a suit brought by a Trustee (Herbert S. Bonney, Jr.) asking the Court of Equity for instructions as to how the Trustee should proceed. Such procedure is recognized (see *Ark. Baptist State Convention* v. *Board of Trustees,* 209 Ark. 236, 189 S. W. 2d 913).

Mrs. Elizabeth S. Polk executed her will on June 4, 1954 and died on June 6, 1954, a citizen and resident of Dallas County, Texas. She owned real estate in Hot Springs, Arkansas and the will was also duly filed in Garland County, and her husband, Eugene Polk, was appointed ancillary administrator in Arkansas. It is about the real estate in Hot Springs that we are here concerned. Mrs. Polk was survived by her husband, Eugene Polk; and he is the life tenant of the Arkansas properties here involved and joined with the Trustee, Mr. Bonney, as a party plaintiff in this suit. Mr. Polk, as life tenant, is cooperative with the Trustee.

The portions of Mrs. Polk's will necessary for a determination of this case are as follows:

"XIV. I devise and bequeath to my beloved husband, Eugene Polk, a life estate in and to my property in Hot Springs, Arkansas, known as the Kress Building, with remainder to Ralph Patterson, Jr., and the Patterson twins, Frank and Helen Patterson, children of my niece and nephew, Helen and Ralph Patterson, Sr., as hereinafter provided. I devise and bequeath to my beloved husband, Eugene Polk, a life estate in and to my real property in Hot Springs, Arkansas, known as the Schneck Building, with remainder to my god-children, James Fitzhugh Burton and Isabel Lee Burton, as hereinafter provided. It being my intention, wish and desire that my beloved husband, Eugene Polk, shall enjoy the rents and revenues and income of every kind and character from both the Kress Building and the Schneck Building as long as he shall live.

"XV. a Upon the death of my beloved husband, Eugene Polk, I devise and bequeath to my friend and attorney, Herbert S. Bonney, Jr., in trust and as the Trustee of my god-children, James Fitzhugh Burton and Isabel Lee Burton, my real property and improvements located in Hot Springs, Arkansas, known as the Schneck Building; and I devise and bequeath to my said Trustee in trust and as Trustee for Ralph Patterson, Jr., and Frank Patterson, and Helen (Sissie) Patterson my real property and improvements situated in Hot Springs, Arkansas, known as the Kress Building. It is my desire that my Trustee shall, if possible, place all of the indebtedness against the two above mentioned buildings and land thereunder upon the Kress Building, thereby releasing the Schneck Building from any and all indebtedness.

"b. My said Trustee shall hold the above described property in trust so long as all of the beneficiaries of said trust are minor children, and when each such beneficiary shall attain the age of twenty-one years, my said Trustee shall convey the undivided interest to which such beneficiary is entitled, to each beneficiary. My trustee shall apply all of the rents and revenues over and above taxes and expenses to retire the mortgage

indebtedness on said real property and improvements, but if the Schneck Building shall be clear of debt, such revenues derived from it shall be paid to the beneficiaries for whom said Trustee shall be holding said Schneck Building, share and share alike.

"c.   I devise and bequeath all of the residue of my property, real, personal and mixed, after the death of my beloved husband, Eugene Polk, other than the special bequests made in this Will, to my said Trustee, Herbert S. Bonney, Jr., and I instruct my said Trustee to liquidate said residue estate and apply the same against the indebtedness then due against the Kress Building and Schneck Building, and should there be any property or estate left after the payment of said indebtedness on said buildings in full, one-half of the same shall be given, share and share alike, to Ralph Patterson, Jr., Frank Patterson, and Helen (Sissie) Patterson, and the other one-half shall be given, share and share alike, to James Fitzhugh Burton and Isabel Lee Burton, as each of the above mentioned Pattersons and Burtons attain the age of twenty-one (21) years.

"XVIII.   .   .   My said Trustee shall have the power with reference to all properties coming to him in trust, except the Kress Building and the Schneck Building properties above described, to sell, dispose of or otherwise perform any act or execute any instruments with reference thereto and shall have all the powers given Corporate Trustees by the statutes of the State of Texas with reference to the handling of such residue property."

It is essential to an understanding of this case that we give certain other facts developed in the trial:

1.   The two properties in Hot Springs are referred to as the "Kress property" because it is leased to S. H. Kress Company, and the "Schneck property" because it is occupied by the Schneck Drug Company. It will be observed from the foregoing copied portions of Mrs. Polk's will that the Kress Building was devised to Mr. Polk for life with the remainder to the Patterson children, but under the trusteeship of Mr. Bonney during

the minority[1] of the Patterson children; and that the Schneck Building was devised to Mr. Polk for life with the remainder to the Burton children, but under the trusteeship of Mr. Bonney during the minority of the Burton children.

2. Mr. Polk is a man now 89 years of age and as life tenant under Mrs. Polk's will is receiving all of the net rents from the two properties.

3. The Patterson children with their birth dates and ages are as follows: (a) Ralph M. Patterson, Jr. was born May 17, 1936 and became twenty-one years of age on May 17, 1957; (b) Helen Patterson, a girl, was born November 25, 1943, and will become twenty-one years of age on her birthday in 1964; (c) Frank Patterson was likewise born on November 25, 1943 and will become twenty-one years of age on his birthday in 1964.

4. The Burton children, with their birth dates and ages, are as follows: (a) James Fitzhugh Burton was born October 5, 1947 and will become twenty-one years of age on his birthday in 1968; (b) Isabel Lee Burton was born on November 6, 1948 and will become twenty-one years of age on her birthday in 1969.

5. It will be observed from Paragraph XV of the will that the age of twenty-one is listed as the determinative age for each beneficiary, so these dates will become important in our decision in this case.

6. The Kress property is now bringing in a monthly rental of $400.00 in addition to taxes and insurance; and the Schneck property is now bringing in $225.00 per month in addition to taxes and insurance. The two properties are now, and were at the time of Mrs. Polk's will and death, under a mortgage to the Equitable Life Assurance Society in the amount of $45,-000.00, which bears interest at the rate of 4 per cent per annum. The mortgage became due on October 1, 1957 and is now past due; and refinancing is awaiting the

---

[1] In various places in this opinion we use the expression "minority", but do so to shorten the language of the will, which says "twenty-one years of age."

outcome of this litigation. The Kress building is leased to S. H. Kress & Company until December 31, 1960. The Schneck building appears to have some sort of option provision that may extend the lease as long as 1965, although that point is not entirely clear in the record.

7. On February 13, 1957, Mr. Herbert S. Bonney, Jr., as Trustee under Mrs. Polk's will, and Mr. Eugene Polk, as ancillary administrator under the will, filed the present proceeding in the Garland Chancery Court, naming as defendants the three Patterson children previously mentioned, the two Burton children previously mentioned, and the guardians of those that are minors. Ralph M. Patterson, Jr. is of full age and is represented by counsel. Mr. Ralph M. Patterson, Sr. is the guardian of Helen Patterson and Frank S. Patterson, minors. Frank M. Burton, Sr. is the guardian of James Fitzhugh Burton and Isabel Lee Burton, who are minors. Mr. Bonney, as Trustee, asked the Garland Chancery Court to give him instructions by answering certain well framed questions, germane portions of which questions relate to: (a) the title and right of the Trustee to the properties; (b) the power or duty of the Trustee to negotiate renewal or extension of the present mortgage of $45,-000.00; (c) whether the Schneck Building should be released from the lien of the mortgage if the new mortgage can be obtained entirely with the Kress Building as security; (d) whether the Trustee has power to act even though Ralph M. Patterson, Jr. is over the age of twenty-one; and (e) whether the Trustee can execute a lease of either property for a longer period than the date when beneficiaries reach twenty-one years of age. The attitude of the life tenant, Mr. Eugene Polk, has been most cooperative; and, due to that fact, we treat the case as though only the Trustee's powers were at issue, because Mr. Polk seems thoroughly agreeable to executing any instruments that the Court may direct the Trustee to execute.

8. The Burton children (all minors) answered by their guardian, and claimed that the Schneck Building should be cleared of the $45,000.00 mortgage and that

the provision in Mrs. Polk's will to that effect in Paragraph XV is mandatory on the Trustee.

9. Ralph M. Patterson, Jr., one of the Patterson children, and being himself of full age, claimed that under Mrs. Polk's will his one-third interest in the Kress Building was vested in him on reaching twenty-one years, subject only to the life estate of Mr. Polk, the $45,000.00 mortgage, and the present lease which expires in 1960; that the Trustee had no power to execute any renewal or extension of that lease on the Kress Building covering the interest of Ralph M. Patterson, Jr. without his individual consent; that the provision in Mrs. Polk's will (that the total indebtedness of $45,000.00 be shifted to the Kress building, if possible) was precatory only and not mandatory; that, at all events, the power of the Trustee had ceased insofar as Ralph Patterson, Jr. was concerned when he became twenty-one years of age.

10. The other two Patterson children, Helen Patterson and Frank Patterson, being minors, answered by their guardian, Ralph M. Patterson, Sr., and adopted in the main the position of Ralph Patterson, Jr.

11. At the trial it was shown that the $45,000.00 mortgage could be refinanced with the Equitable Life Assurance Society on a 15-year basis at 5 per cent, with no principal payments for five years and then amortized in equal installments over the other ten years at 4 per cent; and the Equitable Life Assurance Society was willing to release the Schneck Building and take the Kress Building as its sole security, provided some satisfactory assurance could be obtained as to tenancy of the Kress Building. It was further shown that the Kress Company would pay a rental of $700.00 per month for the Kress Building, provided a lease could be obtained for as long as twenty years from the present expiration in 1960.

So much for the background facts. At the trial the evidence and stipulations developed all of the factual statements hereinbefore contained; and the Chancery

decree answered the questions posed by the Trustee. These answers were, in effect: (a) that the Trustee had power to negotiate a renewal or extension of the present $45,000.00 loan and transfer the entire loan to the Kress Building and completely release the Schneck Building from the mortgage; (b) that the Trustee had the power to completely mortgage the Kress Building with the approval of the Court but without any approval or joinder of Ralph M. Patterson, Jr.; (c) that the Trustee had the complete power to execute a 20-year lease on the Kress Building from its present expiration, beginning January 1, 1960, without any consent or joinder of Ralph Patterson, Jr. or any of the guardians; and (d) that the Trustee, prior to the youngest beneficiary becoming twenty-one years of age, had full power to act, since the life tenant joined with him in the matters.

From that decree there is the present appeal, and we condense the various issues, presented in the excellent briefs, into the following topic headings:

I. *The Duration Of The Trust.* The first point that must be decided is the duration of the trust because if Ralph Patterson, Jr. is correct in his contention, then Mr. Bonney, as Trustee, has no power whatever over the one-third remainder interest of Ralph Patterson, Jr. In *Cross* v. *Manning,* 211 Ark. 803, 202 S. W. 2d 584, we stated some of the rules for construing wills; and those rules are applicable here. After a careful study of all the various provisions of Mrs. Polk's will, as previously copied, we reach the conclusion that Mrs. Polk intended to and did accomplish the following: (a) she devised the Kress property to Mr. Polk for life with remainder to the Patterson children, who have a vested remainder subject to the powers of the Trustee, as hereinafter stated; and (b) the same thing applies to the Schneck property and the Burton children. Thus, there were and are two distinct and separate trusts: (1) a trust for the Patterson children on the Kress property; and (2) a trust for the Burton children on the Schneck property. The will distinctly makes the trusts separate.

Mrs. Polk established a trusteeship over the Kress property until the youngest of the Patterson children reaches the age of twenty-one years; and a trusteeship over the Schneck property until the younger of the Burton children reaches the age of twenty-one years. We have previously given these dates; and they show that the trusteeship over the Schneck property extends until November 6, 1969 when Isabel Lee Burton becomes twenty-one years of age; and the trusteeship over the Kress property extends until November 25, 1964, when Helen Patterson and Frank Patterson become twenty-one years of age. The trusts are separate and distinct.

It will be noted that in Paragraph XV of her will Mrs. Polk said, ''My said Trustee shall hold the above described property in trust so long as all of the beneficiaries of said trust are minor children . . .'' She used the term, ''minor children'' as meaning under twenty-one years of age, because she instantly added, ''. . . and when each such beneficiary shall attain the age of twenty-one (21) years, my said Trustee shall convey the undivided interest to which such beneficiary is entitled to each beneficiary.'' Mrs. Polk undoubtedly knew that the children would not all be twenty-one on the same day and she wanted the trust to continue on the Kress property until the youngest one of the Patterson children became twenty-one. All that Ralph Patterson, Jr. received when he became twenty-one was his beneficial interest in the property subject to the continuation of the trust during the life of the life tenant and until the youngest Patterson child becomes twenty-one. It is clear that when Mrs. Polk said: ''. . . so long as all of the beneficiaries of the trust are minor children,'' she used the word ''all'' in the sense of ''any'' because the trust continues on each property until *all* of the beneficiaries reach twenty-one years of age.

Ralph Patterson, Jr. says that the trusteeship ended on his one-third remainder interest in the Kress property when he became twenty-one years of age. We do not so interpret the will. It was a trusteeship on the *Kress property* during the minority of the three benefi-

ciaries, and was not a mere trusteeship over the *interest* of each of the three children in the Kress property. The Trustee is to handle the entire Kress property and not the separate interest of the still remaining minors. What Ralph Patterson, Jr. was entitled to receive when he became twenty-one years of age was the right to an instrument attesting that he owned a one-third interest in the remainder in the Kress property, subject to the powers of the Trustee under the will of Mrs. Polk; and such power continues until the youngest of the three Patterson children reaches twenty-one years of age.[2] We hold that Mr. Bonney, as Trustee, has all the powers given him by Mrs. Polk's will and that the majority of Ralph Patterson, Jr. has no effect on the powers of the Trustee over the Kress property.

All that has been said regarding the rights of the Patterson children in the Kress property applies with equal force to the rights of the Burton children in the Schneck property. In short, absent any death of the beneficiaries, the trusteeship on the Kress property will cease when the youngest Patterson child reaches the age of twenty-one; and the trusteeship on the Schneck property will cease when the younger of the Burton children reaches the age of twenty-one. Of course, during the life of Mr. Polk the remaindermen have only a vested remainder on which the Trustee may act.

II. *Mandatory* v. *Precatory.* At the time of Mrs. Polk's will both the Kress property and the Schneck property were included in a mortgage to the Equitable Life Assurance Society for $45,000.00; and the same condition exists now. Mrs. Polk's will, as previously copied, says as regards this mortgage indebtedness, It is my desire that my Trustee shall, if possible, place all of the indebtedness against the two above mentioned buildings and land thereunder upon the Kress Building, thereby releasing the Schneck Building from any and all indebtedness. . . but, if the Schneck Building shall be clear of

[2] No one has mentioned in the briefs the possibility of the death of any of the beneficiaries before reaching twenty-one as a termination of the trust; so we entirely ignore such eventuality and continue to refer to reaching the age of twenty-one years as the termination of the trust.

debt, such revenues derived from it shall be paid to the beneficiaries for whom said Trustee shall be holding said Schneck Building, share and share alike."

The Trustee, Mr. Bonney, is Trustee for both sets of remaindermen — the Patterson children and the Burton children — and he wants to be absolutely fair to his *cestui que trusts*. At the same time he wants to be loyal to his trust, so he expresses no opinion as to whether the provision of the will as above referred to is mandatory or precatory. He asked the Chancery Court to make that decision. The Burton children say that the language about freeing the Schneck property is mandatory; and the Patterson children say that the language is precatory.

The distinction between *mandatory* and *precatory* words in wills and trust instruments could make a treatise in itself.[3] In wills and trust instruments, directions are held to be mandatory when such words direct, command, or require something to be done; and directions are held to be *precatory* when such words merely express a hope or wish, and leave it to the trustee or the occurrence of some fortuitous circumstance as to whether the desires will be accomplished. If Mrs. Polk's language about placing the mortgage indebtedness entirely on the Kress Building was merely precatory, then Mr. Bonney, the Trustee, cannot accomplish such purpose. It would unduly prolong this opinion to discuss the value of the properties, the position of the language, the general tone of the words throughout the entire will, or to otherwise elaborate on the reasons for our conclusions; but after a careful study we have concluded that the words in Mrs. Polk's will are mandatory on the Trustee. That is, Mr. Bonney should make every reasonable, honest, and *bona fide* effort to: (a) refinance the $45,-

---

[3] Some few references are these: *Cross* v. *Manning*, 211 Ark. 803, 202 S. W. 2d 584; *Cockrill* v. *Armstrong*, 31 Ark. 580; *Bloom* v. *Strauss*, 73 Ark. 56, 84 S. W. 511; *Wooldridge* v. *Gilman*, 170 Ark. 163, 279 S. W. 20; *Wallace* v. *Wallace*, 179 Ark. 30, 13 S. W. 2d 810; *Union Trust Co.* v. *Madigan*, 183 Ark. 158, 35 S. W. 2d 349; 57 Am. Jur. 771 "Wills" § 1180; Annotations on "Precatory Trusts" in 49 A.L.R. 10, 70 A.L.R. 326, and 107 A.L.R. 896.

000.00 mortgage at a rate of interest in keeping with present day interest rates; and (b) if possible, obtain a mortgagee who will accept the Kress property as sole security as such interest rate. The mortgage can extend longer than the trusteeship over the Kress property, but the mortgage should contain a clause allowing a full repayment of the indebtedness on any anniversary date after ten years from date of the mortgage. Of course, the proposed note and mortgage must be submitted by the Trustee to the Chancery Court for approval; but when the Trustee and the life tenant join in the note and mortgage and the Court approves it, then the Patterson children cannot complain if only the Kress Building be mortgaged.

III. *Long Term Lease Of The Properties.* The present lease on the Kress property expires December 31, 1960, and the present rental[4] is $400.00 a month after payment of taxes and insurance. S. H. Kress & Company has been the tenant of this building for more than forty years and has proved to be a most satisfactory tenant. The Trustee, Mr. Bonney, reported to the Chancery Court in this proceeding that the Kress Company wanted to make, at its own expense, certain extensive improvements on the property, and would pay a rental of $700.00 per month beginning immediately if a valid lease could be made by the Trustee to run until December 31, 1980 (a period of twenty years from the expiration of the present lease). The Chancery Court considered this to be a good monthly rental and indicated that the Trustee would be authorized to execute the lease.

Viewing the matter as a good business proposition, it appears that the Chancery Court was possibly correct: but viewing the matter as regards the powers and authority of the Trustee, we are forced to conclude that Mrs. Polk's will did not give the Trustee power to execute a lease for such a long period of time after the last of the Patterson children becomes of age. Mrs. Polk's will

---

[4] This rental would now be $525.00 per month except for the fact that Mrs. Polk in effect received $125.00 per month of the rental in advance several years ago.

did not set up a trust on the Kress property for an indefinite time and empower the Trustee to pay the beneficiaries their moneys at stated intervals; rather, Mrs. Polk's will set up a trust on the Kress property that could not in any event extend longer than the time when the youngest Patterson child became twenty-one years of age. It was a trust during the minority of the Patterson children, and not a trust for some period of time.

The Trustee cannot be authorized by the Chancery Court to lease the property[5] after the youngest Patterson child reaches twenty-one years of age, unless all the Patterson beneficiaries duly consent[6] to such lease. But absent such consent, then no lease can be made past the end of the trust except, of course, to the end of the calendar year. Our holding is possibly unfortunate from a business viewpoint; but we are obliged to restrict the trust powers to what we construe the testator to have stated in the will. In the excellent briefs there is a discussion of a line of cases on extending the power of the trustee to lease property past the life of the trust.[7] We see no need to discuss these cases because we restrict our holding to the trust here involved; and, in the case at bar, we reach the conclusion that Mrs. Polk intended for the trusts to be separate trusts on the properties for the minority of the class of beneficiaries, and for the powers of the Trustee to terminate in each trust when the youngest beneficiary thereof reaches the age of twenty-one years.

---

[5] Of course, a trustee could make a lease on a calendar year basis (or a crop year basis in an agricultural situation) in accordance with business customs of the locality; and a lease could extend to the end of the calendar year (or crop year) even if such time extended beyond the life of the trust. For equitable purposes we consider such a lease as being *coterminus* with the trust because at no event could it be longer than one year past the end of the trust. But the situation here is to make a lease for ten or fifteen years after the termination of the trust.

[6] Ralph Patterson, Jr., now being of full age, could now make his own consent to such long term lease; and by proper proceedings the guardian of the two minor beneficiaries could be empowered to make such consent.

[7] Annotations somewhat in point are found in 46 A.L.R. 2d 907 and 43 A.L.R. 2d 1102. See also 54 Am. Jur. 376 and Restatement of Trusts § 189e, page 500.

## CONCLUSION

The decree is affirmed in part and reversed in part as herein contained; and the cause is remanded to reinvest the Chancery Court with jurisdiction to enter a decree in keeping with this opinion and for any further proceedings that any of the parties may undertake, consistent with the views herein contained. The costs of all courts will be taxed one-half against each of the respective trust estates.

GEORGE ROSE SMITH, J., not participating.

ROBINSON, J., dissents, being of the opinion that when Ralph Patterson, Jr. became 21 years of age the trust ended as to his interest.